UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

OCEAN PARTNERS HOLDINGS LIMITED )
and OCEAN PARTNERS USA, INC., )
 )
      Plaintiffs, )
 )
  vs. )   Case No. 4:11-CV-173 (CEJ)
 )
DOE RUN RESOURCES CORP., )
 )
      Defendant. )

## MEMORANDUM AND ORDER

Before the Court is the motion of plaintiffs Ocean Partners Holdings Limited and Ocean Partners USA, Inc., for a judgment confirming an international commercial arbitration award. Plaintiffs also move to dismiss the affirmative defenses and counterclaims filed by defendant Does Run Resources Corporation.

I.    **Background**[1]

Ocean Partners and Doe Run were parties to contracts for the sale of lead and copper concentrates.[2] The lead contract contained a clause requiring that all disputes be settled in London, England, in accordance with the rules of the London Metal Exchange (the "tribunal"). The contract also provided that its terms were to be construed in accordance with the laws of New York State. After disputes arose, the parties engaged in arbitration before the tribunal. On January 29, 2008, an arbitration

---

[1]In addition to the contracts [Docs. 1-1 and 1-2], the Court has relied on the decisions of the Arbitration Panel [Docs. 1-3, 1-4, 1-6] and the parties' notices of commencement of assessment of bill of costs, filed in the English court [Docs. 17-9 and 17-10].

[2]The contracts were executed in 2003 and 2004 between Doe Run, as seller, and Pechiney World Trade (USA), Inc., as purchaser. In October 2004, Ocean Partners assumed Pechiney's obligations to the contracts.

panel of the tribunal issued an award.  An addendum was issued on May 1, 2008, followed by a second addendum on July 10, 2008, and a revised second addendum on July 29, 2008.  [Docs. 1-3 through 1-6].  Both parties were awarded damages, with a net payment of $725,753.50, including interest, due from Doe Run to Ocean Partners.  Attorneys' fees and costs were to be allocated to the prevailing party on the separate issues.  As directed by the tribunal, the parties have applied to the English courts for a determination of their respective fees and costs.  See email string dated Nov. 19 and 20, 2008 [Doc. 17-8] ("The Tribunal . . . hereby confirms that it will not deal with the issue of costs further and hereby orders that any costs assessment not agreed to between the parties be dealt with by the Court.") and notices of commencement of assessment of bill of costs [Docs. 17-9 and 17-10].

The dispute arises from a delivery of lead concentrates by Doe Run to Ocean Partners in 2005.  The lead concentrates were shipped by barge down the Mississippi River to New Orleans, where they were transferred to the Shahrazade Dream for shipment to China.  Pl. Ex. 3, Award at 2.  Observers noted water leaking from the cargo as it was being transferred onto the Shahrazade.  The vessel agent halted the loading and ordered that the wet cargo be set aside.  Id. at 4.  Ocean Partners hired a third party to conduct moisture tests but decided to finish loading the entire cargo without waiting for the results. Bulldozers were used to trim the cargo in the hope that this would resolve the problems caused by the extra moisture in the lead concentrates. Id.  The tribunal found that the trimming actually contributed to the emergence of water in the cargo holds.  Id. at 7.

Free-flowing water appeared in the holds shortly after the Shahrazade Dream left New Orleans.  Id. at 5.  The vessel master sought refuge at the port of Cristobal in Panama where the water was pumped from the holds.  Id. at 6.  Water again

appeared in the vessel's holds as it proceeded through the Panama Canal water. The Shahrazade Dream put into port again in Manzanillo, Mexico. This time, the cargo was unloaded, inspected and dried. The cargo was ultimately transferred to a specialized bulk carrier and completed its journey without incident. Id. at 7. The parties did not complete performance of a second shipment of lead concentrates or copper concentrates as contemplated by the original contracts.

The tribunal found that the cargo of lead concentrates delivered by Doe Run did not conform in its entirety to the moisture level specifications of the contract. The tribunal also found that Ocean Partners was aware of the nonconformity when it accepted the cargo and accepted the risks of ocean transport with the nonconforming load. A prudent shipper would not have loaded the cargo until it could have been properly tested and dried, as necessary. Although the Shahrazade Dream was seaworthy and conformed with the contract specification, a prudent shipper would not have shipped the cargo on that vessel unless the moisture level of the cargo was found to fully comply with contract specifications. The tribunal found for Doe Run on the unpaid balance due on the lead and copper contracts, stevedoring costs in New Orleans, and salary costs. The tribunal found for Ocean Partners on the costs for removing, drying, and reloading the cargo, and costs related to the vessel charters. The tribunal denied Ocean Partners' claims on hedging loss. Id. at 8-9.

In response to plaintiffs' complaint to confirm the arbitration award, defendant filed counterclaims seeking: (1) a declaration that the final arbitration award includes Doe Run's attorney's fees and costs, (2) a judgment for attorney's fees and costs in the amount of $2,805,890.51, (3) a declaration that the arbitration award cannot be confirmed because it is completely irrational and/or evidences a manifest disregard for New York law, (4) a declaration that the arbitration award cannot be confirmed

because it is completely irrational and/or evidences a manifest disregard for the law, and (5) a declaration that Pechiney World Trade (USA), Inc. ( an entity not a party to the arbitration proceedings or to this case), is jointly and severally liable with Ocean Partners for Doe Run's damages, attorneys' fees and costs. Doe Run also asserts several affirmative defenses, including the assertion that Ocean Partners' complaint is barred by the statute of limitations.

II.  **Legal Standard**

Although plaintiffs initiated this action by filing a complaint, it is more properly treated as a motion to confirm an arbitral award. See Telenor Mobile Communications AS v. Storm LLC, 524 F. Supp. 2d 332, 343 n.7 (S.D.N.Y. 2007) (treating petition to confirm award as a motion); 9 U.S.C. § 6 ("Any application to the court . . . shall be made and heard in the manner provided by law for the making and hearing of motions . . ."). Accordingly, the Court will treat plaintiffs' submissions as a motion to confirm the tribunal's award pursuant to 9 U.S.C. § 207. Defendant's counterclaims 3 and 4 will be treated as an opposition to plaintiffs' motion to confirm; counterclaims 1 and 2 will be treated as a counter-motion to modify the award; counterclaim 5 will be treated as a claim for declaratory relief.

Confirmation of foreign arbitration awards is governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, known as the New York Convention, and federal law implementing the Convention, codified at 9 U.S.C. §§ 201-208. Ministry of Defense and Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Defense Systems, Inc., 665 F.3d 1091, 1095 (9th Cir. 2011). In a case governed by the Convention, "[t]he party opposing enforcement of an arbitral award has the burden to prove that one of the defenses under the New York Convention applies. The burden is a heavy one, as the showing required to avoid summary

confirmance is high." Zeiler v. Deitsch, 500 F.3d 157, 164 (2d Cir. 2007) (citations omitted).

### III. Discussion

Plaintiffs bring this action pursuant to 9 U.S.C. § 207, which provides:

> Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. <u>The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention</u>.

Id. (emphasis added).

The specified grounds are found in Article V of the Convention. Article V(1) authorizes a court to deny confirmation of the arbitral award under the following circumstances:

> (a) The parties to the agreement . . . were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or
>
> (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or
>
> (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or
>
> (d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or
>
> (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

Article V(2) of the Convention provides two additional grounds for denying recognition of an arbitral award:

(a) The subject matter of the difference is not capable of settlement by arbitration under [United States] law . . .; or

(b) The recognition or enforcement of the award would be contrary to the public policy of [the United States].

### A.    Doe Run's Challenges to the Award

#### 1.    Doe Run's Section 202 arguments[3]

Doe Run asserts that the arbitration award is governed by the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, rather than the New York Convention, because the "relevant" parties to the dispute are all United States citizens.  Doe Run relies on § 202, which states: "An agreement or award arising out of . . . a relationship entirely between citizens of the United States shall be deemed not to fall under the Convention unless the relationship . . . has some . . . reasonable relation with one or more foreign states."  Doe Run and Ocean Partners USA, Inc., are citizens of the United States and Ocean Partners Holdings Limited is a citizen of the United Kingdom.

Doe Run argues that the Court should disregard the citizenship of Ocean Partners Holdings Limited.  First, Doe Run asserts, the lead and copper contracts were signed by Doe Run and Pechiney USA, Inc, also a United States citizen.  According to Doe Run, Pechiney's assignment of its interest to Ocean Partners should have no bearing on the § 202 analysis because Doe Run did not consent to changes in its original bargain with Pechiney.  Furthermore, Doe Run asserts, Pechiney assigned its rights to Ocean Partners USA, Inc., a domestic corporation, not to the English entity, Ocean Partners Holding.  Both assertions in this matter are contradicted by Doe Run's

---

[3]See defendant's third affirmative defense.

earlier admission to the tribunal that, "[b]y a Notice of Assignment dated 20 September 2004, Pechiney, Doe Run, and Ocean Partners Holdings Limited . . . agreed that Ocean [Partners] Holdings . . . would assume the rights and obligations of Pechiney under the Sale Contract." Def. Exs. C and D ¶2 [Docs. 19-3 and 19-4]. Moreover, Doe Run never contested the tribunal's jurisdiction based on an allegation that Pechiney's assignment to Ocean Partners invalidated the agreement to arbitrate before the London Metals Exchange.

Doe Run also argues that, in the event the Court concludes that Ocean Partners Holdings Limited is a relevant party for purposes of § 202, "the Court cannot rule that Ocean Holdings is a United Kingdom Company (*i.e.*, not a United States citizen) on the pleadings [because] Doe Run did not admit that Ocean Holdings is a United Kingdom company." Def. Opp. at 8 n.4 [Doc. 19]. Doe Run's argument is based on the Rule 12(b)(6) standard. However, as previously stated, the Court has deemed this matter to be a motion for confirmation and thus is not limited to the pleadings. And, even under the Rule 12(b) standards, the Court may consider public records, exhibits attached to the pleadings, and materials necessarily embraced by the complaint, Mills v. City of Grand Forks, 614 F.3d 495, 498 (8th Cir. 2010), and it would be within the proper exercise of the Court's authority to determine the citizenship of one of the litigants. Finally, Doe Run's argument fails because it pleaded in its counterclaim that Ocean Partners Holding Limited is a citizen of the United Kingdom. [Doc. 8 at 7].

Thus, the arbitration did not arise "out of . . . a relationship entirely between citizens of the United States" as required by § 202 and this matter is properly addressed under § 207. This finding forecloses Doe Run's final argument that Ocean Partners' motion to confirm the arbitration award is time-barred under the FAA's one-year limitation. See 9 U.S.C. § 9 ("any time within one year after the award is made,

-7-

any party to the arbitration may apply to the court . . . for an order confirming the award.")  The award was issued in January 29, 2008 and Ocean Partners initiated this action on January 25, 2011, thus complying with the three-year period specified by § 207.

### 2. "Manifest Disregard"[4]

Doe Run argues that the Court should not confirm the arbitration award because it is "completely irrational and/or evidences a manifest disregard" for the law in several respects.  First, the tribunal "ignored" New York's prohibition on a buyer who accepts nonconforming goods from seeking damages; second, Ocean Partners engaged in a pattern of withholding relevant documents requiring Doe Run to seek relief from the tribunal;[5] and third, one of Ocean Partners' witnesses spoke with another during a break in his testimony in violation of the tribunals' instructions.[6]

"Manifest disregard of the law" is a recognized basis for vacating an arbitration award under the FAA.  M & C Corp. v. Erwin Behr GmbH & Co., KG, 87 F.3d 844, 851 (6th Cir. 1996) (quoting Wilko v. Swan, 346 U.S. 427, 436-37 (1953), *overruled on other grounds*).  In order to constitute a "manifest disregard of the law," the error under review must be "obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator.  Moreover, the term 'disregard' implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it."  Id. (quoting Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker, 808 F.2d 930, 933 (2d Cir. 1986)).

---

[4]See defendant's fifth and sixth affirmative defenses and third and fourth counterclaims.

[5]The tribunal ordered Ocean Partners to produce the withheld documents.

[6]The tribunal inquired of the witnesses on this violation of the rules.

-8-

Doe Run's challenge on this basis cannot succeed because "manifest disregard" is not one of the enumerated grounds for relief set forth in the Convention. "There is now considerable caselaw holding that, in an action to confirm an award rendered in, or under the law of, a foreign jurisdiction, the grounds for relief enumerated in Article V of the Convention are the only grounds available for setting aside an arbitral award." Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc., 126 F.3d 15, 20 (2d Cir. 1997) (emphasis added). "[T]here is simply no support in either the text of the New York Convention or case law for [the] position that an arbitrator's 'manifest disregard of the law' is a valid basis upon which the Court can deny confirmation of an arbitral award." International Trading and Industrial Invest. Co. v. DynCorp Aerospace Tech., 763 F. Supp. 2d 12, 30 (D.D.C. 2011). See also International Standard Elec. Corp. v. Bridas Sociedad Anonima Petrolera, Industrial y Comercial, 745 F. Supp. 172, 181-82 (S.D.N.Y. 1990) (refusing to apply a "manifest disregard of law" standard on a motion to vacate a foreign arbitral award)). Second, the record here does not support a finding that the tribunal "appreciate[d] the existence of a clearly governing legal principle but decide[d] to ignore or pay no attention to it." The Court will also overrule Doe Run's challenges to the award based upon alleged discovery abuses and witness collusion because they similarly depend upon a finding that the FAA, rather than the New York Convention, governs.

### 3. Doe Run's Proposed Modifications[7]

Doe Run asks for a declaration that its attorneys' fees and costs should be applied against any damages it owes under the award. This amounts to a request for modification of the award. The Court lacks subject matter jurisdiction over claims

---

[7] See defendant's fourth affirmative defense and first and second counterclaims.

seeking to vacate, set aside, or modify a foreign arbitral award. See Gulf Petro Trading Co. v. Nigerian Nat'l Petroleum Corp., 512 F.3d 742, 746-47 (5th Cir. 2008) (country "in which, or under the [arbitration] law of which, the award was made" has primary jurisdiction and can modify an award, but a United States court sitting in secondary jurisdiction cannot vacate, set aside or modify the award) (alteration in original).  See also M & C Corp., 87 F.3d at 848 (for purposes of the Convention, the "country in which, or under the law of which, the award was made" refers "exclusively to procedural and not substantive law, and more precisely, to the regimen or scheme of arbitral procedural law under which the arbitration was conducted, and not the substantive law of contract which was applied in the case.") (quoting International Standard Elec. Corp., 745 F.Supp. at 178.  This matter was not arbitrated in the United States according to its arbitral laws and, thus, the Court has secondary jurisdiction.

### 4.     Declaration of Joint and Several Liability[8]

The lead contract contained an assignment clause providing that "the party making [an] assignment shall remain jointly and severally liable with the assignee for the due and prompt performance of all obligations of Buyer or Seller hereunder." ¶ 19, Comp. Ex. 1 [Doc. 1-1].  In its fifth counterclaim, Doe Run seeks a declaration that Pechiney World Trade (USA), Inc., is jointly and severally liable with Ocean Partners for any damages owed to Doe Run, including attorney's fees and costs.

The Court concludes that this claim is premature.  The tribunal determined that each party was liable to the other in varying amounts, with the net balance in favor of Ocean Partners, before the determination of attorneys' fees and costs.  Each party has

---

[8]See defendant's fifth counterclaim.

-10-

filed a claim for its fees and costs with the English court,[9] but until that court makes a final determination, there is no liability for this Court to assign to Ocean Partners, and no basis for holding Pechiney World Trade jointly and severally liable.

### B.   Confirmation of Award

Section 207 directs the Court to "confirm the award unless it finds one of the grounds for refusal . . . specified in the [New York] Convention.  In order to avoid summary affirmance, Doe Run bears the "heavy" burden of proving that one of the defenses under the Convention applies.  Doe Run has not asserted a challenge based on any of the defenses provided by the Convention.  Thus, the award will be confirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the plaintiffs' motion to confirm the arbitration award [Doc. # 1] is **granted**.

**IT IS FURTHER ORDERED** that plaintiffs' motion to dismiss [Doc. # 16] is **denied as moot**.

**IT IS FURTHER ORDERED** that defendant's fifth counterclaim for declaratory judgment of joint and several liability is **denied** as premature.

A separate judgment in accordance with this Memorandum and Order will be entered this same date.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 12th day of March, 2012.

---

[9] Doe Run seeks $1,225,683.95 and £ 838,056.68 in costs; Ocean Partners seeks $33,823.25 and £ 546,365.  [Docs. 17-9 and 17-10].  In this action, Doe Run alleges that it is entitled to $2,805,890.51 for attorney's fees.  Counterclm. ¶ 34.